# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

JOHN F. BYRNE.

205    9
114a   588

*Opinion filed October 26, 1903—Rehearing denied December 2, 1903.*

1. RAILROADS—*when carrier is liable for breach of contract.* A carrier is liable for breach of contract to haul the property car of a theatrical company from one point to another in time for its performance, notwithstanding one draw-bar of the car was broken, so the car could not be hauled on a passenger train except at the rear end, which would be in violation of law, where the contract was general, and not one to haul the car on a particular train.

2. SAME—*when condition of car does not relieve carrier from liability for failure to haul.* That a draw-bar was broken on a car does not relieve the carrier from liability for failure to haul the same to its destination in the time agreed upon, where the evidence tends to show that the carrier's agreement was general, and not to haul the car on a particular passenger train.

3. SAME—*when the terms of a contract are to be determined by jury.* Whether a contract, the only written evidence of which is a receipt for the price "for hauling car Decatur to Bloomington," is a contract to haul the car on a particular train or a general contract to haul the car on any train so as to deliver it to its destination in time, is a question of fact for the jury, where the evidence on such point is conflicting.

4. SAME—*what may be considered by jury on question of damages.* In estimating the loss sustained by defendant's failure to perform its

contract to haul a baggage car of a theatrical company, the jury may consider the nature of the plaintiff's business and his profits for a reasonable period next preceding the breach of contract.

5. INSTRUCTIONS—*when omission of facts from an instruction is not error.* Omission from an instruction summarizing the facts essential to a recovery, of circumstances which are part of the testimony tending to disprove the plaintiff's case but not of controlling importance, is not error.

*Illinois Central Railroad Co.* v. *Byrne*, 105 Ill. App. 96, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. GEORGE W. PATTON, Judge, presiding.

This is a suit in assumpsit, brought by the appellee against the appellant company in the circuit court of McLean county to recover damages for a breach of contract, alleged to have been made by the appellant company with the appellee to haul a car, loaded with scenery and theatrical property belonging to the appellee, from Decatur to Bloomington. Appellee was the owner and manager of a traveling theatrical troupe, known as the "Eight Bells Company." This company gave a performance in Decatur on Saturday night, February 2, 1895, and was to give another in Bloomington on the following Monday night, February 4. It is claimed by appellee, that, by reason of the failure of the appellant to haul said car as agreed, appellee missed his engagement to give a performance in Bloomington as previously advertised, and to which appellee had sold a large number of tickets, and to which he could have sold more tickets had he been able to keep his engagement. Bloomington is distant forty-two miles from Decatur, and it is claimed by appellee that, on account of appellant's refusal to perform its contract to haul this car filled with theatrical scenery and properties from Decatur to Bloomington in time to enable appellee to give his performance in Bloomington, appellee suffered damages. Appellee's claim is, that he had a contract with the manager of an opera

house in Bloomington to give his performance on the evening of Monday, February 4, and had advertised the performance, so to be given, by newspaper and bill-board.

About ten days or more before the car was to be hauled from Decatur, appellee's advance agent went to an agent of appellant in Decatur to make the contract. The car arrived in Decatur over the Vandalia Line from Terre Haute at eleven o'clock on Saturday morning, February 2, 1895. On the way from Terre Haute to Decatur one of the draw-bars of the car was pulled out, but was re-coupled in the train by means of a chain, and in that manner the car was hauled safely to Decatur. It is claimed on the part of the appellee, that the Vandalia Line delivered the car to appellant, and that it was accepted by appellant between four and six o'clock on the afternoon of Saturday. There is, however, a dispute in the evidence as to its acceptance. The evidence tends to show, however, that, under the order of one of appellant's agents, appellant's switch crew took the car from the place where it had been placed by the Vandalia Line, turned it around, and hauled it to a place where appellee could unload it, and then, after the performance in Decatur on Saturday night, the car was re-loaded and returned to a proper place in the yards of the company, where it remained all day the following Sunday, February 3, ready to be attached to a train to be hauled to Bloomington.

As soon as the car and company arrived in Decatur, appellee's agent went to the office of appellant's ticket agent, and told him that the draw-bar was out of order. The ticket agent claims that he told appellee's agent that the car would have to pass appellant's inspection, and appellant also claims that appellee's agent replied that the Vandalia people were going to fix the car. Appellee's agent then paid to appellant's agent $15.00, the price asked for hauling the car from Decatur to Bloomington. Appellee's agent also paid the fare of the mem-

bers of the troupe, being about twenty in number, from Decatur to Bloomington, each fare being about $1.31; and passenger tickets were given to appellee's agent by appellant's agent. A receipt was also given appellee for the $15.00. This receipt, though written and issued on Saturday, February 2, was dated Monday, February 4, the day when the car was to be hauled from Decatur to Bloomington. The receipt is as follows:

"Illinois Central Railroad Company,
"*Decatur, Ill., City Station, Feb. 4, 1895.*

"Received of W. E. Flack, manager Eight Bells Company, $15.00 for hauling car Decatur to Bloomington.
E. Pennywell, C. T. A., M. E.
Illinois Central R. R., February 4, 1895.
City Office, Decatur, Ill."

A plea of general issue was filed by appellant, and by agreement all evidence, including tender, was to be admitted under the plea of general issue, and all other pleas were withdrawn. The passenger tickets were tendered to appellant at the trial. Appellant tendered the sum, paid for tickets and the hauling of the car, and this sum was taken and receipted for by appellee.

It is claimed by appellee, that he was prevented by promises of the appellant's agent from making other arrangements to take this car, with its stage scenery and apparatus, from Decatur to Bloomington, until it was too late to reach Bloomington in time for the performance on Monday night. It is claimed that, on Monday morning, the trainmaster refused to allow the car to go. As it was useless to go without the scenery and baggage, the company was compelled to remain in Decatur, it not being possible to reach Bloomington over any other railroad in time to give the performance on the evening in question. The contention of appellee is, that, as the result of appellant's refusal to haul the car, appellee was compelled to, and did, abandon his Bloomington engagement, and instead went to Springfield.

The damage claimed by appellee is the cost for extra board for his company, extra transportation to Springfield, loss of his share of advance sales in Bloomington, and loss of box-office sales that would have been made, based upon previous sales in the same city for the same performance by the same company.

The case was first tried at the April term in the circuit court of McLean county in 1898, and the trial resulted in a verdict and judgment for appellee for $400.00, including the sum of approximately $45.00 for cash paid by appellee to appellant, being the contract price for hauling the car and the company of players from Decatur to Bloomington; which service, however, was never performed. Before the first judgment was rendered, appellant paid that sum to the clerk for appellee, as a tender back of the cash received by it, with interest to the date of the tender. An appeal was taken to the Appellate Court for the Third District, and the judgment was there reversed because of errors in four of appellee's instructions, and error in refusing appellant's eighth refused instruction, as will be seen by reference to the case of *Illinois Central Railroad Co.* v. *Bryne*, 78 Ill. App. 204. After the reversal the cause was re-instated on the docket, and subsequently on June 19, 1900, all the pleadings and depositions in the case were destroyed by a fire, which consumed the McLean county court house. By agreement, upon the second trial, the transcript of the record was withdrawn from the office of the clerk of the Appellate Court, and the testimony of appellee's witnesses in the shape of depositions was read from the transcript, and such of the appellant's testimony as it desired was also read. By agreement, also, it was provided that either party might supplement such testimony by oral testimony of witnesses, if desired.

Upon the second trial of the case, the jury returned a verdict in favor of appellee for $300.00; motion for new trial was overruled and judgment entered upon the ver-

dict.    An appeal was taken to the Appellate Court, and the Appellate Court has affirmed the second judgment of the circuit court for $300.00, at the same time granting a certificate of importance.    The present appeal is prosecuted from such judgment of affirmance.

Charles L. Capen, (John G. Drennan, of counsel,) for appellant:

The statute, since 1849, has prohibited the transportation of any freight, merchandise or lumber car at the rear of a passenger car, either in a freight or passenger train.    To direct or suffer this is a misdemeanor.    Starr & Cur. Stat. chap. 114, sec. 89, p. 3277.

The alleged contract in this case could not have been performed without violation of the statute and of appellant's charter; therefore such performance would have been illegal and any agreement relative thereto void. *Goodrich* v. *Tenney,* 144 Ill. 422; *Penn* v. *Bornman,* 102 id. 523.

Even should the parties assent to the enforcement of an illegal agreement, and not raise the question either by pleadings or otherwise, the court, on appeal, will of its own motion refuse to enforce it.    *Wright* v. *Cudahy,* 168 Ill. 86; Beach on Contracts, secs. 1447, 1443, 1445.

A contract by a carrier which disables it from performing its public duties will not be enforced.    Elliott on Railways, sec. 1396; *Choteau* v. *Transportation Co.* 22 Mo. App. 286.

When the condition of the property offered for shipment is such that extra care and risk would be imposed by its transportation, the carrier may refuse to receive or carry.    5 Am. & Eng. Ency. of Law, (2d ed.) 167; *Railroad Co.* v. *Armstrong,* 62 Ill. App. 228; *Muster* v. *Railroad Co.* 4 C. B. (N. S.) 676.

A carrier, under a contract, express or implied, undertaking to transport property by a particular train, has no right, without further instructions from the shipper, to carry it by another train, and if he does so is guilty

of a breach of contract or conversion. *Blumenthal* v. *Railroad Co.* 79 Me. 550; *Wald* v. *Railroad Co.* 162 Ill. 545; *Edson* v. *Pennsylvania Co.* 70 Ill. App. 654; Hutchinson on Carriers, (2d ed.) sec. 314, *et seq.*

When the contract is to carry by a particular train or in a particular manner, the carrier, himself without fault, is not bound, and has no right, of his own motion, to vary that contract by carrying on another train or in another manner. Hutchinson on Carriers, (2d ed.) sec. 311; *Railroad Co.* v. *Waters*, 41 Ill. 73.

When the declaration is based upon a special contract the plaintiff cannot sustain his action by proof of an implied contract, or of the common law duty imposed upon the carrier to transport within a reasonable time. In such case there is not a variance, but a failure of proof. *Railroad Co.* v. *Worland*, 50 Ind. 339; *Railroad Co.* v. *Ensley*, 50 id. 378.

The general rule is, loss of profits is not recoverable, and this especially when the proof is uncertain, dependent upon the opinions of witnesses, and as to a business not established long enough to create reasonable certainty, or one dependent upon unforeseen contingencies. *Green* v. *Williams*, 45 Ill. 206; *Davis* v. *Railroad Co.* 1 Disn. 23; *Railroad Co.* v. *Decker*, 3 Ill. App. 135; *Allin* v. *McLean*, 48 Mich. 428; *Central T. Co.* v. *Clark*, 92 Fed. Rep. 293.

A. E. DeMange, for appellee:

Where one railroad company contracts with another to make a connection for the promisee, non-performance is not excused by the refusal of the latter company to permit the connection to be made. *Railroad Co.* v. *Reichert*, 58 Md. 262.

Impossibility of performance will not excuse non-performance. Still less will unexpected difficulty or inconvenience excuse it. *Bacon* v. *Cobb*, 45 Ill. 52.

As carriers contract all their business with the public through agents, the public have a right to assume that

they have authority to do whatever they attempt or agree to do. Lawson on Contracts of Carriers, sec. 229, p. 332.

A contract made with the agent is made with the carrier itself. Lawson on Contracts of Carriers, sec. 229, p. 332; *Myall* v. *Boston,* 19 N. H. 122; *Reynolds* v. *Tapman,* 15 Mass. 370.

An agent may bind the carrier by a contract beyond its legal duties and in conflict with its rules. Lawson on Contracts of Carriers, sec. 230, p. 334.

Proof of a supplemental agreement, made necessary by changed conditions, was proper. *Boscowitz* v. *Express Co.* 93 Ill. 532.

The measure of damages is the profits that appellee would have made out of his engagement in Bloomington but for appellant's breach of its contract. Testimony as to previous profits made by the same company with the same performance at the same place affords such a basis with a reasonable degree of certainty. *Chapman* v. *Kirby,* 49 Ill. 219.

Mr. Justice Magruder delivered the opinion of the court:

The main contentions of the appellant company in this case are, *first,* that the contract between appellee and appellant was that the car, containing appellee's theatrical scenery and apparatus, should be hauled from Decatur to Bloomington by a passenger train, which was to leave Decatur on Monday morning about nine o'clock, and that appellant did not agree to haul the car in any other train or in any other way; and *second,* that appellant was not obliged to haul the car until it had passed the inspection of its car inspector, and that, by reason of the broken condition of the draw-bar on one end of the car, it did not pass such inspection.

In connection with the first contention of the appellant, it claims that it was not bound to perform the contract as made, because such contract was illegal and in

violation of the statute, and also of its own charter. Section 21 of the "Act in relation to fencing and operating railroads," approved March 31, 1874, provides as follows: "In no train shall freight, merchandise or lumber cars be run in the rear of passenger cars, and if such cars, or any of them, shall be so run, the officer or agent who so directed, or knowingly suffered such arrangement to be made, shall each be deemed guilty of a misdemeanor, and punished accordingly." (3 Starr & Cur. Ann. Stat.—2d ed.—p. 3277). Appellant's contention is that, inasmuch as, by the terms of this statute, it was forbidden to haul the car in question in the rear of the passenger train to start from Decatur on Monday morning, the contract made by it was a void contract, and could not be enforced. It is said in relation to such a contract, that, the parties being *in pari delicto*, the law leaves them where it finds them, and that no question of estoppel or ratification can possibly arise.

The trial court held the law upon this subject to be as contended for by the appellant, because it gave to the jury for the appellant the following instruction numbered 5, to-wit:

"Even if you believe from the evidence Hovey [the appellant's freight agent] agreed with plaintiff's manager, the defendant should haul the car in controversy at the rear end of the passenger train on Monday morning, such agreement, if any such is shown by the evidence, was one prohibited by the laws of this State, and is wholly invalid and illegal. You are instructed, therefore, such agreement, if any, did not bind the defendant, and as to it, you will find the defendant not guilty."

In view of this instruction, so given at the request of the appellant, the latter has no reason to complain of the action of the court in that regard. But it was a question in dispute between the parties whether or not the contract was to haul the car by this particular passenger train, which was to leave Decatur on the morning of

Monday, February 4, about nine o'clock. Both parties submitted the question to the jury whether the contract was to haul the car by this particular train, or whether the appellant agreed to haul the car from Decatur to Bloomington in time for the theatrical performance to be given at Bloomington on the evening of Monday, February 4, without reference to any special or particular train. If the contract was a general agreement to take the car from Decatur to Bloomington in time for the performance, the appellant could have hauled it by attaching it to a locomotive, or a freight train, and thus a violation of the statute by attaching it to a passenger train would have been avoided.

It is true that the draw-bar at one end of the car in question was broken, but there is testimony, tending to show that the draw-bar at the other end of the car was in good condition, and that, by turning the car around and attaching the end where the draw-bar was not broken, the car could have been hauled from Decatur to Bloomington within the time specified; and there is also evidence, tending to show that the appellant, through its agent or agents, agreed thus to haul it, or allowed appellee to believe that they would so haul it. If the appellant agreed to haul the car by thus attaching the end of it, which was in good condition, to some locomotive or train, it waived its objection that the car was not in good condition for transportation. These questions were all questions of fact, and were submitted to the jury by proper instructions, and the jury have found them against the appellant. The judgment of the Appellate Court, affirming the judgment of the circuit court, is binding upon us, so far as these questions are concerned.

For instance, the second instruction, given for the appellee by the trial court, was as follows:

"If you believe from the evidence plaintiff made a contract with the Illinois Central Railroad Company to haul his car from Decatur to Bloomington without refer-

ence to any particular train it should be connected with, or to the condition of the car, in time to enable him to give his show there, and that he paid for such hauling; and if you further believe from the evidence said railroad company could have hauled said car, coupled by its good end either to a locomotive or to the rear end of a train, other than a passenger train, without danger in excess of the ordinary danger incident to the hauling of other cars, and if you further believe from the evidence plaintiff informed said railroad company's agents at Decatur of his engagement or contract to give a show in Bloomington on the evening of February 4, 1895, and that, after said agents became so informed, the said railroad company failed or refused to haul said car to Bloomington in time to enable plaintiff to give his show in Bloomington, then the plaintiff is entitled to recover all additional expense, if any has been shown by the evidence necessarily incurred by him, and all profits which he would have received for giving the said performance in Bloomington, after deducting the expense of advertising his show in Bloomington, if said car had in fact been hauled to Bloomington in time to enable him to give said show in Bloomington, if you believe from the evidence he would have received any such profits."

This instruction submitted to the jury the question, whether or not the contract was that appellant should haul the car to Bloomington without reference to any particular train it should be connected with, and without reference to the condition of the car. It also left to the jury to find whether the car could have been hauled, even if the draw-bar at one end of it was broken, by coupling its good end to a locomotive, or to the rear end of a train other than a passenger train.

The court gave a number of instructions for appellant, and among others, the following numbered 2, to-wit:

"In the absence of a contract or agreement to the contrary, the defendant was not required or bound in law to

haul the car in controversy in any other train or in any other way than contemplated or provided in such contract or agreement. And if, therefore, you believe from the evidence the contract or agreement in this case was, the car in controversy should be hauled in or by the Monday morning passenger train, then the defendant was not required to haul it in any other train, or in a special train, or by a special engine. And if you believe from the evidence that plaintiff's car, when said passenger train reached Decatur, was in such condition it could not be safely hauled from Decatur to Bloomington except at the rear of the train, and as the rear car of the train, your verdict should be for the defendant."

By this instruction the appellant submitted the question to the jury, whether or not the contract was such a contract as the appellant claimed it to be, and it also embodied the theories of the appellant as to the contract and as to the condition of the car. We are unable to see, therefore, that the appellant was in any way injured, or its rights prejudiced, by the action of the court in the giving of instructions.

Again, the court gave to the jury, in behalf of the appellant, an instruction numbered 6, which was as follows:

"The court instructs you that, if the plaintiff contracted for the transportation of the car in controversy from Decatur to Bloomington by the passenger train that left on Monday morning, and that no contract was made to haul it by any other train, and if you further believe from the evidence that the condition of said car on Monday morning was such that it could not safely be carried in any other place in the train than at the rear, and as the rear car, your verdict in such case must be for the defendant."

Several of the instructions, given by the trial court for the appellee, are complained of by the appellant upon the ground that they do not recite all the facts relied upon by the appellant in its defense to the action, but

only recite such facts as are necessary to warrant the jury in finding for the appellee. The instructions are not objectionable for the reason thus insisted upon. These instructions are based upon the hypothesis or theory contended for by the appellee, and they summarize the elements necessary to a recovery upon that theory without omitting any essential matter. In *Chicago and Alton Railroad Co.* v. *Harrington*, 192 Ill. 9, we said (p. 24): "The rule, that an instruction is erroneous which sums up all or a part of the facts which the evidence tends to prove on one side, and omits the facts on the other side, does not apply to an instruction, which merely fails to embody evidence, tending to establish a distinct antagonistic theory. * * * All the law requires is that an instruction, based upon some particular hypothesis warranted by the evidence, which undertakes to summarize the elements in the cause essential to a recovery upon that theory, must not omit any essential matter. * * * It is not necessary to incorporate all the evidence in an instruction, but only matters which constitute a material issue in the case." In the case at bar, the facts, which are alleged to have been omitted in the instructions for the appellee, are merely circumstances which are a part of the testimony tending to disprove the appellee's cause of action, and are not controlling circumstances. The appellant asked, and the court gave in its behalf an instruction similar to those complained of as having been given for the appellee, which embodied facts establishing the particular hypothesis or theory for which appellant contended. Several instructions were thus given for appellant, which presented appellant's grounds of defense, but did not include all the facts tending to establish appellee's right of recovery. "A party has no right to complain of an error in an instruction when a like error appears in an instruction given at his own request." (*Chicago and Alton Railroad Co.* v. *Harrington*, *supra*, and cases there referred to).

Some of the instructions, given for the appellee, are also criticised by appellant's counsel upon the alleged ground that they lay down an improper rule as to the damages to be recovered, but we do not regard them as erroneous in this respect. The evidence tends to show that appellee and his troupe could not go from Decatur to Bloomington, and were detained in Decatur, and that they had to be transported by another route to Springfield. The evidence tends to show, also, that the advance sale of tickets to the show, which had been made in Bloomington, amounted to $100.00; that this amount had to be refunded to the ticket purchasers; and that the advance and box-office sales together would have amounted to about $500.00, estimated by the amount of sales at previous exhibitions of the performance. The evidence also tended to show that there was a contract between appellee and the owner of the opera house in Bloomington, where the show was to take place, by the terms of which appellee was to receive seventy per cent of the sales. There was evidence also tending to show that the appellant or its agents were informed that the object of going from Decatur to Bloomington was to give this show on the night of February 4. The instructions left it to the jury to determine whether or not the proper notice and information were communicated by appellee or his agents to appellant or its agents as to the purpose of hauling the car to Bloomington, and as to appellee's contract in relation to the same. In estimating the losses, sustained by reason of the failure to perform a contract of this character, it is proper for the jury to take into consideration the nature of the plaintiff's business and his profits for a reasonable period next preceding the time when the contract was violated. (*Chapman* v. *Kirby*, 49 Ill. 211).

We find no error in the record, which would justify us in reversing the judgment of the Appellate Court. Accordingly that judgment is affirmed.

*Judgment affirmed.*