THE CHICAGO UNION TRACTION COMPANY

*v.*

GEORGE W. BRETHAUER.

*Opinion filed October 23, 1906—Rehearing denied Dec. 5, 1906.*

1. APPEALS AND ERRORS—*claim of material variance is equivalent to claim that the declaration is not sustained.* A contention by the appellant that there was a material variance between the declaration and the proofs is equivalent to a contention that the declaration is not sustained by the proofs and presents only this question for the consideration of the Supreme Court on appeal, and the rule applies which limits the consideration of the evidence to the determination whether it tends to support the cause of action alleged.

2. STREET RAILWAYS—*when allegation as to rate of speed of car need not be proved.* In an action by a passenger against a street car company for injuries received by being wrongfully and forcibly ejected from defendant's car, the speed of the car at the time need not be proved as alleged, since its only bearing would be upon the question of danger attending a violent expulsion from the car and to characterize the act and motive of the ejection.

3. SAME—*company not justified in violating ordinance because it believed it invalid.* The fact that managers of a street railway believe a transfer ordinance is invalid and are contesting it in the courts does not justify the company in violating its provisions, and when the ordinance is held valid by the Supreme Court the duty of the company and its servants, and their relation to passengers, must be determined by the ordinance and not by the instructions of the company, since if the ordinance is valid it was valid from its passage, and not merely from the time it was adjudged so.

4. SAME—*when statement of conductor who issued a transfer is admissible.* Proof that the conductor who issued a transfer to a passenger stated at the time that it was good on the line the passenger desired to take is admissible in an action against the company for wrongful ejection of the passenger by another conductor who refused to accept the transfer, even though the statement was contrary to the company's instructions to its conductors, where it was in accord with the terms of an ordinance which the company was contesting but which was subsequently held valid.

5. SAME—*it is the duty of a street car conductor to obey the law regardless of instructions.* It is the duty of a street car conductor in issuing transfers to comply with the ordinances governing his line of duty in that respect, regardless of instructions to the con-

trary from his superiors, and in so acting he must be held to be acting for the company.

6. SAME—*a conductor in issuing transfers stands in relation of railroad ticket seller.* A street car conductor supplied with blank transfers, and authorized to punch and deliver them to passengers upon request in consideration of a cash fare, stands in the same relation to the company and the passengers as a ticket seller of the company, and what he says to the passengers with reference to the transfer and the privileges conferred thereby is admissible as part of the *res gestæ* and as characterizing the subsequent conduct of the transfer holder.

7. EVIDENCE—*when the proof of business income is competent.* Where plaintiff's business at the time of his injury was that of a jewelry jobber, the income from which was dependent upon his personal labor and supervision, it is proper, under suitable allegations of the declaration, to prove how much money he made per month for the year prior to his injury, even though he styles such income as "profits" in answering a question of the court as to whether he meant how much he took in or how much he cleared. (*Fisher* v. *Jansen,* 128 Ill. 549, distinguished.)

8. SAME—*when street car transfer ordinance is admissible.* In an action by a passenger for wrongful ejection from a street car by a conductor who refused to accept his transfer, it is proper to admit in evidence an ordinance in force at the time of the injury regulating the subject of street car transfers and showing the validity of the refused transfer and the passenger's legal right to be carried thereon, of which the company must be conclusively presumed to have had notice, and as bearing upon the animus of the conductor in ejecting the passenger from the car.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding.

This suit was brought by appellee against appellant in the superior court of Cook county, alleging damages sustained by reason of injuries received in being wrongfully ejected from one of appellant's street cars in the city of Chicago. In June, 1904, appellee recovered a judgment for $10,000 on the verdict of a jury. Appellant prosecuted an appeal to the Appellate Court for the First District, where

the judgment was affirmed, and by further appeal the record is brought to this court for review.

The declaration on which the case was tried consisted of ten counts. The seventh and eighth counts allege, in substance, as follows: That on the 12th day of January, 1902, appellee became a passenger on one of appellant's street cars going in a north-westerly direction to an intersection with Halsted street, where the appellee desired to take a Halsted street car, which was also operated by appellant, and continue his journey northward to his home; that appellee paid to the conductor of the Lincoln avenue car five cents, being the usual and regular fare; that at appellee's request the conductor on the Lincoln avenue car gave him a transfer, telling him at the time that the same was good on the Halsted street car which appellee desired to take; that appellee boarded a north-bound Halsted street car at the Lincoln avenue intersection, and tendered to the conductor thereof the transfer he had received from the conductor of the Lincoln avenue car; that the conductor on the Halsted street car refused to accept the transfer and demanded of appellee that he pay another fare, and that thereupon the conductor with force and arms assaulted the appellee, and wrongfully, wantonly and maliciously, and with excessive and unreasonable force and violence, pulled appellee through the car, and with great violence and force ejected appellee from the car while the same was moving at a high rate of speed, thereby causing great injury to appellee. Said counts also set out *in hæc verba* certain sections of the ordinances of the city of Chicago, one section of which provides that the rate of fare to be charged by the North Chicago City Railway Company on any of the lines therein authorized or thereafter to be constructed should not exceed five cents for each passenger for any continuous trip. Another section provides, in substance, that transfer tickets shall be issued to any passenger, entitling such passenger, without further charge, to be carried on any other line owned, leased or operated by the same per-

son, firm or corporation owning or operating the line on which the fare is paid, at any point where such lines join, cross, intersect or come within a distance of 200 feet of each other. These counts aver specially that appellee was greatly injured in his person and was thereby prevented from carrying on his business as a jeweler, and was deprived of the gains, profits, income, salary, commissions and rewards which he otherwise would have received from said business, to the amount of $5000. All the other counts in the declaration are substantially like the seventh and eighth, except that the ordinances above referred to are not set out in them.

To this declaration appellant pleaded the general issue and two special pleas, which set up that appellee was wrongfully on appellant's car and refused to leave when requested, and that he was ejected, and that no more force was used than was necessary to defend against the resistance and assaults of appellee. These pleas presented the issues which were submitted to the jury. The general course of the evidence followed the pleadings.

The foregoing statement of the pleadings will serve as a general outline of the facts, which will be supplemented by a more detailed statement in the opinion as the same may become necessary to a proper understanding of the different points arising in the case.

John A. Rose, and Albert M. Cross, (W. W. Gurley, of counsel,) for appellant.

Louis A. Heile, and William Meade Fletcher, for appellee.

Mr. Justice Vickers delivered the opinion of the court:

At the close of all the evidence appellant offered an instruction as to each count directing a verdict for appellant and asked the court to give them to the jury, which was re-

fused, and the exceptions preserved to this ruling present the first question for our determination.

Appellant contends that there was a material variance between the proofs and the declaration. This is only another way of saying that the proof does not support the declaration, and presents no other question for our consideration than would be raised by the usual contention that the declaration is not sustained by the evidence. (*Libby, McNeill & Libby* v. *Scherman,* 146 Ill. 540, *Harris* v. *Shebek,* 151 id. 287.) When the charge is one cause of action and the proof is another and different cause, there is a variance within the ordinary acceptation of that term. There is, in such case, also a literal failure of the proof to sustain the allegations of the declaration. We have often held that where a motion to direct a verdict has been denied, the only question preserved for our consideration is whether the evidence, when considered together with all the reasonable inferences to be drawn therefrom, fairly tends to support the cause of action as set out in the declaration. (*Blakeslee's Express Co.* v. *Ford,* 215 Ill. 230, and cases there cited.) Where, as in the case at bar, the question is treated as one of variance the rule in the above cases applies, and we are only permitted to examine the evidence within the limitations of the above rule.

In our consideration of this case we have given the evidence much more attention than was necessary to determine the question presented to this court. Irene Maitre, a witness for appellee, testified, in substance, as follows: "I was sitting about three seats from the front of the car, on the west side. There were people standing where we were, in the front part of the car. All the seats were taken. My attention was first called to Mr. Brethauer when the conductor said the transfers were not any good. Mr. Brethauer answered that he had just got them from the other car for the Halsted street car, and the next was, he took him by the shoulders and pushed him out of the front door. He did not demand any fare. The conductor spoke in a loud

tone of voice and attracted our attention. Mr. Brethauer spoke in a common tone. He said, 'Are they not any good?' like anybody would say. They were standing up when they were speaking about the transfers. They were talking in a loud voice about the transfers. That attracted our attention and I looked up and saw that he had given him the transfers. The conductor had the transfers in his hand and he said they were not any good, and Mr. Brethauer said he had just got them from the other car, and the next thing he was taken on through the car on past us on to the front platform and pushed off. The conductor had hold of him by the shoulder. He pushed him right forward and threw him off the car. The door was open. It moved swiftly. Mr. Brethauer started to hold on to something,—on the railing, it looked, on the front platform. Coming through the car Mr. Brethauer was facing the north and then the east. I judge the whole thing happened in about three seconds. The man was shoved right off of the car into the street, and that was all that happened on the front platform. The conductor's hands were on his shoulders. He was pushing him forward. It seemed to be with force. I could not see Mr. Brethauer after he was pushed, but I stood up in the car and saw him lying in the street, about the center of the car. We looked slanting south from where we were sitting in the front. He was lying on his back and his head was on the curb. He was lying there unconscious. We thought he was dead. He did not do anything. We watched him there, I should judge, about half an hour,—close on to it."

Six other passengers besides the appellee, who were on this car, testify in substantial corroboration of the witness whose testimony we have set out at length. The variations in their statements are only with respect to the minor details of the occurrence. Their accounts are not so much alike as to suggest collusion or so unlike as to discredit either of them. In addition to these witnesses the attending physician testified as to finding appellee in an unconscious condition,

with wounds in the back of his head, and said that appellee remained unconscious for about a week, and he attributes his unconsciousness to concussion of the brain. All of the witnesses who saw the transaction agree in the statement that appellee fell backward and that he struck the curb with the back part of his head.

The conductor and motorman and three passengers testify for the appellant. These witnesses give a somewhat different version of the transaction from that given by appellee's witnesses. The conductor testified that after appellee had been put off the car he assaulted the conductor by striking him over the shoulders with a cane, and that when appellee was in the act of delivering a second blow with the cane the conductor put his hand on appellee's breast and pushed him backward, causing him to fall on his back on the curb. The motorman testified that "after he (appellee) got out on the platform the man stepped off the car, and when he got on the street he turned around and raised his cane and struck the conductor across the shoulders. The conductor stood there and the man came back again with his cane to strike the conductor with the cane, and the conductor put his hand up to ward off the blow and the man fell back in the street. He fell between the curb and the car,—on his back, I believe. I don't know where his head was,—I would not say. I did not get off the car. He was lying on the street,—I should judge probably two or three feet back of the body of the car and three or four feet east of the car. I didn't see anything until the conductor got off. I believe he raised him up." Neither one of the three passengers who testified for appellant gives any details of what occurred after the conductor and appellee were out of the car on the platform. With this evidence in the record the court below did not err in submitting the case to the jury.

It is also suggested that the evidence fails to establish the averment in the declaration as to the speed of the car, and that there was a variance in this respect. It was not

necessary to prove that the car was moving at the rate of speed alleged, or any other rate of speed. The rate of speed was only important as bearing upon the dangers which would attend a violent expulsion from the car, and thereby characterize the act of ejection and the motive of the conductor at the time. *Illinois Central Railroad Co.* v. *Davenport,* 177 Ill. 110.

It is next contended by appellant that the court erred in the admission of evidence over appellant's objection. Under this contention objection is made to the ruling of the court below upon three matters of evidence which require separate consideration.

*First*—Over the objection of appellant the court below permitted witnesses to testify that at the time appellee obtained the transfers the conductor on the Lincoln avenue car told appellee that the transfers were good on the northbound Halsted street car. At the time of the transaction in question the validity of the ordinance of the city of Chicago relating to transfers was being contested in the courts. The position assumed by appellant was that the ordinance was invalid, and accordingly instructions had been issued to conductors on the Halsted street line not to receive transfers at this point from the Lincoln avenue line, and the refusal of the conductor to honor appellee's transfer was in accordance with instructions he had from his superiors. October 25, 1902, this court handed down an opinion sustaining the validity of the ordinance in question, and the case is reported as *Chicago Union Traction Co.* v. *City of Chicago,* 199 Ill. 484. (See, also, *Same* v. *Same,* id. 579.) The effect of this decision was to establish and declare the validity of the ordinance, not as of the date of the opinion, but as of the date it took effect by its terms. The ordinance was as valid before the rendition of this decision as it was afterwards, and if appellant chose to regard it as invalid and instructed its employees accordingly, it did so at the risk of having its contention set at naught and its acts in viola-

tion of the ordinance pronounced illegal. A violation of the law cannot be excused on the grounds that the violator believed the law unconstitutional. The validity of the ordinance having been established, the duty of the appellant and its servants, and their relations to appellee, must be determined by the ordinance rather than by the instructions of appellant to its servants based on the assumption that the ordinance was invalid. Under the provisions of the ordinance the conductor of the Lincoln avenue car was required to give appellee a transfer to the Halsted street car, and it was the legal duty of the conductor of the Halsted street car to accept said transfer and carry appellee to any regular stopping place within the city of Chicago where he desired to leave the car. The evidence shows that the conductor on the Lincoln avenue car furnished appellee with the transfer and explained to him at the time that it was good on the Halsted street line. In so doing the conductor was in the direct line of his duty imposed by the ordinance. He was the only person on the car having the transfers and authorized to deliver them. It was his duty, as a servant of appellant, to issue transfers regardless of any instructions he may have had to the contrary from his superiors, and in carrying out this duty he must be held to have been acting for and on behalf of the company.

In the view we take of this question the conductor of a street car line who is placed in charge of a car, supplied with blank transfers and authorized to punch and deliver them to passengers upon request, in consideration of cash fare previously paid, stands in the relation to the street car company and its passengers very much like a ticket seller who has been chosen for the purpose of supplying the public, for a consideration, with tickets entitling the holder to certain rights and privileges. In such case the ticket seller, for the purpose of that transaction, is the direct representative of the company for which the tickets are sold, and what such agent says in connection with the sale of tickets and as to

223—34

the extent of the privileges thereby secured has often been held admissible as part of the *res gestæ* and as characterizing the subsequent conduct of the purchaser of such ticket. *Erie Railroad Co.* v. *Winter,* 143 U. S. 60, is a case where the conductor of a railroad train punched a passenger's ticket in such a way as to allow the passenger, as he said, "a stop-over" at a station not then reached on the railroad line. Upon reaching the station at which the passenger desired to stop over the passenger left the train, and the next day took a train on the same road intending to use the unused portion of his ticket. The conductor on the latter train refused to honor the ticket, demanded cash fare, and upon his refusal to pay the passenger was forcibly ejected. One of the questions in the case was whether it was competent to show what the first conductor said with respect to the ticket being good in the form he returned it to the passenger. Evidence was also admitted in this case that the ticket agent who sold the passenger the ticket in Boston told the passenger that the ticket was good for stop-over privileges, and it was held that it was entirely proper for the passenger to make inquiries of the ticket agent and to rely upon what the latter told him with respect to his stop-over privileges. (See, also, *Hufford* v. *Grand Rapids Railroad Co.* 64 Mich. 631; *Burnham* v. *Grand Trunk Railway Co.* 63 Me. 298; *Murdock* v. *Boston and Albany Railroad Co.* 137 Mass. 293.) In these cases evidence of what the ticket seller said to the purchaser at the time of the sale was admitted. In *Illinois Central Railroad Co.* v. *Davenport,* 177 Ill. 110, where the ticket agent informed the purchaser that the ticket sold by such agent was good on a certain train, the court held that the plaintiff did not enter upon the train as a trespasser. It is there said: "The ticket agent informed the appellee the ticket entitled him to ride on that train. * * * The appellee having entered the train by direction of the station agent of the company, and without notice that passengers were not carried upon it, did not go upon the train as a tres-

passer." Such evidence has been held admissible with respect to ticket agents by the courts of many other States of the Union, and we see no reason why a conductor of a street car, in delivering transfers to passengers when it is his legal duty to do so, should not be governed by the same rules. There was no error in the admission of this evidence.

*Second*—It is next objected that the court erred in permitting appellee to state that he was making an average of $500 per month out of his business during the year preceding the accident and that he had only been able to make from $50 to $75 profit per month since the accident. The declaration and the proof showed that appellee was engaged in the business of jewelry jobber. He maintained an office and place of business at 84 State street, Chicago. As well as we can gather it from the evidence, appellee's method of doing business was to go out personally and solicit orders, and in the evening he would personally take the goods sold to his customers and deliver them. He had no clerks or assistants except his daughter. He was not working for others, but running a business for himself. Appellant, in discussing this assignment of error, construes what the witness said as "profits" in his business, and argues from this assumption that future profits of a commercial business are too uncertain and speculative to form the basis of a verdict in a personal injury case. We have read appellee's evidence from the record upon this point, and upon a careful consideration of it we think appellant's assumption that appellee stated that he had made $500 "profit," in the usual commercial sense in which the word profit is understood, is not a fair construction of appellee's evidence. He was asked what he was making in his business, on an average, per month the year preceding the accident. His answer was $500. After some discussion as to the admissibility of the evidence and after the court had refused to strike out the answer, the court suggested that he did not understand what he meant,—whether he made that much or took in

that much,—and in answer to a question propounded by counsel for the purpose of bringing out the information which the court wanted, witness said that he made that much profit.

Much reliance is placed upon the case of *Fisher* v. *Jansen,* 128 Ill. 549, and a quotation from that case is made which counsel insist supports appellant's contention. The language there used by the court must be understood with reference to the facts of the case then being considered. From a statement of the facts in the *Jansen case* it appears that Jansen had been in the book business as a member of the firm of Jansen, McClurg & Co.; that his health had broken down from overwork, and that he had retired from business and was not at the time of the accident engaged in any business whatever. Under this state of facts it is said: "It is manifest that it would have been incompetent to have proved what he had made in business prior to his injuries, since that was the result of circumstances that might never be repeated." It is true, it would not do to speculate on the probability that Jansen would re-embark in business, and if he did so that his profits would be what they had been in former years when engaged with others in that line of business.

The distinction between the *Jansen case* and the one at bar is very clear. Here appellee was engaged in a business at the time of the accident, from which his income was dependent largely, if not entirely, on his personal labor and supervision. How much capital he had invested, or whether any at all, is not shown. From the fact, disclosed by the record, that appellee had recently gone through bankruptcy and all his real estate had been sold under foreclosure we infer that he was probably engaged in the well known line of jewelry jobbing that requires little or no capital. Appellee's daughter describes his business as "wholesale jobber," which, as is well known, is a name assumed by a large class of dealers who transact a sort of brokerage business in jew-

elry practically without capital. Manifestly, in this line of business the income derived therefrom is as much the personal earnings as would be the salary or commissions of a traveling salesman. Such evidence is clearly admissible under proper averments in the declaration, and in the cases where it has been held inadmissible the judgment has usually been rested on the ground that the declaration did not specifically allege such special damages.

In the case of *Wabash Western Railway Co.* v. *Friedman,* 146 Ill. 583, evidence that the plaintiff was receiving $3000 per year was held erroneous, not, however, because his loss in that regard was not a proper element of damage, but, to use the language of the court on page 593, because "the declaration contained no allegation of any special contract or engagement of the plaintiff with any person under which he might earn money for his services." In this case a number of decisions from this and other States are reviewed, an examination of which will show that they turned on the question of the sufficiency of the declaration to warrant the proffered testimony.

In *Chicago and Erie Railroad Co.* v. *Meech,* 163 Ill. 305, the plaintiff was permitted to state how much he earned in his business as a painter for a year anterior to the accident. He answered, $3000, approximately. It was shown in the case that the plaintiff was a contracting painter, and that his mode of doing business was to obtain contracts and employ others to assist him in doing the work. The averment in the declaration was as follows: "And [the plaintiff] has been prevented from attending to his usual business and avocation and earning and receiving large emoluments which he otherwise would have received." The evidence was held admissible, and after a careful review of the cases in this State, including *Fisher* v. *Jansen, supra,* the general rule deducible from all the cases is there formulated, as follows (p. 314) : "The rule deducible from the cases in this State is, that in order to recover compensation for inability

to work at the plaintiff's ordinary and usual employment or business, all that is necessary in the declaration is the general averment of such inability, caused by the injury, and consequent loss and damage, and that proof of his particular employment or business and of his ordinary wages or earnings therein is admissible in evidence under such general averments, but that when it is sought to recover for loss of profits or earnings that depend upon the performance of a special contract or engagement, then the special and particular damages, and the facts on which they are based, must be set out in the declaration. The distinction we have noted may be a relaxation of the common law rule, but it is founded upon the precedents to be found in our Reports." Under the rule above laid down and the averments of appellee's declaration we think the evidence was competent, and there was therefore no error committed in admitting it. This case is very similar, upon this point, to *Chicago Union Traction Co.* v. *May,* 221 Ill. 530, where testimony of this character was held competent.

*Third*—It is further contended by appellant that the court erred in admitting the ordinance in evidence. The objection is that the ordinance was immaterial, since under the law it was the duty of appellee, when he presented a transfer which was refused by the conductor, to either pay fare or leave the car at the request of the conductor, and if he refused and sustained injuries while resisting ejection he could not recover, unless it be for the use of excessive and unnecessary force. Conceding the correctness of the above rule in its application to street cars as well as to other carriers of passengers, we do not think there was any error in the admission of the ordinance. The ordinance proves the validity of the transfer. It also established appellee's legal right to be carried on that transfer, of which appellant is conclusively presumed to have had notice, and logically has a direct bearing on the animus of the conductor in ejecting him from the car.

The foregoing discussion substantially covers all of the points that we deem it necessary to discuss. While there are some other matters discussed in appellant's brief, we do not believe we would be justified in extending this opinion by their discussion. We have reached the conclusion that the verdict of the jury may well rest upon the grounds of excessive and unnecessary force used by appellant's conductor in forcibly ejecting appellee from its car.

There being no reversible error in the case the judgment is affirmed.

*Judgment affirmed.*