(*Municipal Court of Chicago.*)

## J. C. Beifeld

### vs.

## Chicago & Northwestern Railway Company.

(October, 1908.)

1. CARRIERS—EXCESS BAGGAGE—DELAY IN DELIVERY—NEGLIGENCE—
   VALIDITY OF EXEMPTION CLAUSE.  Where excess baggage is de-
   layed in transit through the negligence of the carrier the latter
   is not freed of liability by reason of a stipulation in its con-
   tract of carriage to the effect that it is to be released from all
   liability from loss, injury or detention of the property whether
   due to the negligence of the carrier or not, such a stipulation
   being contrary to public policy.
2. SAME—OBJECTION THAT ARTICLES NOT BAGGAGE—WAIVER.  A car-
   rier, accepting as baggage articles or merchandise not properly
   having that character with knowledge that they are offered for
   transportation as baggage, waives any objection on that ground
   and his liability therefor is the same as that with reference to
   baggage in general.
3. SAME—DAMAGES—LOSS OF PROFITS.  The ordinary profits of a
   traveling salesman calling on regular trade are not so specu-
   lative as not to be recoverable as damages for detention by a
   carrier of his sample trunks precluding him from making sales.
4. SAME—NOTICE OF CONTENTS.  The evidence in this case is suffi-
   cient to charge the carrier with notice of the contents of plain-
   tiff's trunks and his use for them so to make it liable for dam-
   ages resultant upon their detention.

Action on the case.  Heard before Judge Foster.  The facts
are stated in the opinion.

*Coburn & Case*, attorneys for plaintiff.

*William S. Kies*, attorney for defendant.

FOSTER, J.—

In this case the plaintiff, a traveling salesman, checked his
baggage for Milwaukee on Sunday, October 6, 1907, over the
defendant's road, but one of his trunks, which was then in Chi-
cago and in the defendant's possession, was not forwarded
until Thursday, October 10, when pursuant to instructions it
was sent to Appleton, but did not arrive there until after the

plaintiff had left, and he first saw it on his return through Appleton on Friday, October 11. He did not, however, stop to get the trunk, and it was forwarded to him and finally received by him Saturday night. The trunks had upon them his business card as follows: "J. C. Beifeld, 225 Dearborn St., Chicago. Representing Eastern Manufacturers of Cloaks and Suits," and in checking them for Milwaukee the following conversation with the agent of the defendant was held: "I asked the baggageman to check these two sample trunks to Milwaukee so that they would get there this evening, and he took the checks from me. He asked me how much excess I had; I said 300 pounds, and I paid him the excess out of the same book and told him, 'These are sample trunks and must arrive in Milwaukee this evening.' He said, 'They certainly will.'"

In checking his baggage the plaintiff offered excess baggage coupons from the regular book of the company which had been signed by the plaintiff without, as he testifies, any knowledge of the stipulation therein contained limiting the liability of the company as set forth below.

It appeared that the plaintiff was an experienced travelling man and had been using excess baggage coupon books for years, but whether the other books that he had used contained this limitation does not appear. The clause referred to reads as follows:

"In consideration of the reduced rate at which this ticket is sold to me and of the receipt hereunder of any property other than legal baggage which may be at any time so received, I hereby forever release the railroad companies upon whose lines this baggage ticket is available from all liability for loss, injury or detention of any such property other than legal baggage, whether the loss, injury or detention be caused with or without negligence of any of said companies or its employes."

It is contended by counsel for the defendant that the above exemption from liability is binding, and it is urged that as the railroad company was not, as a common carrier, bound to accept sample trunks as baggage, it could impose such terms as it saw fit, even to the point of exempting itself from negligence of its own employes.

It would seem that the question to be decided here is whether this case falls within the doctrine of *Blank v. I. C. R. R. Co.*, 182 Ill. 332, and *C., R. I. & P. R. R. Co. v. Hamler*, 215 Ill. 525, on the one hand, or within the doctrine of *I. C. R. R. Co. v. Beebe*, 174 Ill. 13, and *I. C. R. R. Co. v. Anderson*, 184 Ill. 294, on the other hand. The first two cases hold that contracts exempting railroad companies from liability for injury to employes of express companies and the Pullman Palace Car Company riding on special cars and attending to their employers' special business, are binding, while the last two cases hold that contracts exempting railroad companies from liability to the owner or agent accompanying stock or goods shipped over the railroad, are invalid as being against public policy.

In *Blank v. I. C. R. R. Co.*, 182 Ill. 332, on page 339, the supreme ocurt said:

"An attempt is made to liken this case to the case where a person is carried with his stock or goods and where he is regarded as a passenger. There are many such cases where the carrier is bound to receive and carry goods or stock, and where, by general usage or by the rules of the company, the owner or his agent may go or is required to go in charge of the property. In such cases the owner is entitled to demand the carriage of his property as a part of the duty of the railroad company toward the public as a common carrier, under the conditions fixed by law. The railroad company is bound to receive and carry for anybody who shall appear, and by the rules or usage of the company the charge for carrying the stock includes the carrying of the person in charge. Such a person is a passenger. But the difference in the relation between such a case and this is apparent."

We think the most significant portion of this paragraph is the statement that "such a person is a passenger." There can be no question that in the case at bar the plaintiff was a passenger, and we believe that when the railroad company once accepted the sample trunks of the plaintiff as baggage its liability for such sample trunks became the same as that for any ordinary baggage. It seems to us clear that such a case as the one above falls within the rules applicable to the car-

riage of stock and their accompanying owner rather than within the rules applicable to cases of express agents and Pullman porters, who are not, as is expressly stated in the cases above referred to, passengers. That the defendant company was charged with notice of the contents of these trunks is, we think, clear on the evidence, which will be discussed more at length in considering the question of damages. It is doubtless true that the company could have refused in the first instance to take the plaintiff's trunk as baggage, but the carriage thereof was merely incidental to the contract existing between defendant and plaintiff and creating the relation of carrier and passenger. It is like the stock cases, where the owner is carried along as incidental to the shipment of his stock. In both cases there is a contract relation existing between the carrier and the passenger, thus distinguishing these cases from the cases where an express agent or a Pullman porter has no contract with the carrier but only with their several employers. When the company chose to accept these sample trunks and their contents as baggage, it assumed all duties with regard thereto of a common carrier.

In *L. S. & M. S. Ry. Co. v. Hochstin,* 67 Ill. App. 514, Mr. Justice Waterman at p. 517 said:

"The carrier having, after being informed as to the character of the articles, received them as baggage, is liable for their loss, although they consisted of merchandise."

See also *Hamburg American Packet Co. v. Gattman,* 127 Ill. 598, at 610.

In 6 Cyc. 668, it is said:

"If the carrier accepts as baggage articles or merchandise not properly having that character, with knowledge that they are offered for transportation as baggage, he thereby waives any objection on that ground, and his liability therefor is the same as that with reference to baggage in general."

It is contended on behalf of the defendant that even if the above contract is invalid and the defendant liable as a common carrier that only nominal damages can be awarded, first, because it is said that the damages attempted to be proven, to-wit: loss of profit, are in their very nature too speculative and

uncertain, and next, because it is claimed that the defendant was not chargeable with notice of the purpose for which the plaintiff desired his sample trunks in Milwaukee. The facts bearing on the question of the damages as disclosed by the evidence are as follows: The plaintiff had two sample trunks, one of which was forwarded promptly and received by him in Milwaukee in due time. This contained samples of children's clothing. The other trunk, which was delayed, contained his samples of ladies' clothing. He testified that his season for selling children's clothing was early in the year, and that during October and November he usually sold only a small amount of children's clothing, but that on ladies' clothing his sales during the years 1904, 1905 and 1906 had been $40,000 per year, on which he received eight per cent commission. That he sold to pretty nearly the same people (p. 26); that his sales varied (pp. 37 and 38) according to the styles and seasons, and that he could not tell just what he was going to sell. That during the days he was without his sample trunks he failed to sell any of the ladies' clothing, and that he afterwards revisited the same places and sold perhaps a quarter of his ordinary sales. During these days he made some small sales of children's clothing, in the amount of about $1,300. That his expenses for the months of October and November were about $600.

We will first discuss whether from the very nature of the case the damages attempted to be proven by the plaintiff were too speculative under the authorities, and then we will discuss the question as to whether or not the defendant had sufficient notice of the character of the damages to make it liable therefor.

In the following cases evidence of actual profits in the past was held admissible as affording a basis for calculating probable profits of which the plaintiffs were deprived by acts of the defendants: In *Chapman v. Kirby,* 49 Ill. 211, the profits of a planing mill business for past six months were admitted in evidence. In *Fitzsimmons v. Munch,* 79 App. 538, in the same way the profits of a flour mill for the past ten years were admitted. In *C. & E. R. R. Co. v. Meech,* 163 Ill. 305, a paint-

ing contractor, who employed others to assist him, was allowed to testify as to how much he had earned as a painter without regard to any special contracts for some years prior to the accident. In *I. C. R. R. Co. v. Byrne*, 205 Ill. 9, the profits of a theatrical performance in Bloomington at previous performances were admitted. This case and the next case, it might be noted in passing, were actions on contract, and our courts seem to apply the same rule of damage in such an action that they do in an action of tort. In *Landis v. Wolf*, 206 Ill. 392, which was a suit on an injunction bond, the profits of a farm were held to afford a proper basis of damages.

In *Chicago Union Traction Company v. Brethauer*, 223 Ill. 521, the court held that it was competent for the plaintiff, who was a jewelry jobber, to testify that his profits had been $500 per year, it appearing that he had no clerks or assistants and probably no capital invested. The court says at p. 531:

"Appellant in discussing this assignment of error, construes what the witness says as 'profits' in his business, and argues from this assumption that future profits of a commercial business are too uncertain and speculative to form the basis of a verdict in a personal injury case."

The court held to the contrary.

On the other hand, in *Chicago City Railway Company v. Flynn*, 131 App. 502, it was held that evidence as to how much the plaintiff would have made in his coal business was too speculative and uncertain to be recognized as an element of damages, the court stating that there might have been some special deals made by the plaintiff in these previous years, and compared his business to that of a stock broker.

A careful consideration of these cases would indicate that our supreme court would not regard plaintiff's probable profits as too speculative an element of damages.

It is stated to be true that plaintiff's sales varied somewhat according to the styles and seasons, but surely his business as disclosed by the evidence was more certain than the probable returns from any theatrical performance, and equally certain with the profits of any planing or flour mill. It is impossible to distinguish the case at bar from the jewelry jobber in the

Brethauer case. Not one word was said in the evidence on any specially advantageous sales made by plaintiff during the previous years he testified concerning, and the burden lay on the defendant, under the doctrine of *Chapman v. Kirby*, followed by the above cases, to show any depression in business or other cause that might have made plaintiff's profits less during the months in question than they had been in previous years. A coal broker or stock broker, such as is mentioned in the Flynn case in 131 App. would doubtless have much greater variation in his sales from year to year than would plaintiff in selling substantially the same line of goods to the same customers. It is clear that if plaintiff can not recover on the basis of loss of profits, he can get no compensation whatever for what must have been a serious loss. The rule applied in some cases that a recovery could be had for the rental value of the property detained could not be applied here, for a drummer's samples have no rental value to others, nor could the plaintiff have supplied their place with others. We do not think there is anything so peculiarly speculative or uncertain in plaintiff's business as to exclude proof similar to that admitted in other cases.

We next come to the consideration of the question as to whether the defendant had sufficient notice to the purpose for which the plaintiff desired his samples in Milwaukee to make it liable for loss of profits as claimed, and this is a point not free from difficulty. In this connection it should be observed that the very terms of clause 7 in the baggage coupon book referred to property "other than legal baggage." Plaintiff's card which appeared on the trunk described him as "Representing Eastern Manufacturers of Cloaks and Suits." In his conversation with the baggageman he expressly stated that they were "sample" trunks and must be in Milwaukee that night. These facts are, we think, sufficient to charge the defendant with notice of the character of the contents of the trunk. In *Hamburg-American Co. v. Gattman*, 127 Ill. 598, the court held that under all the circumstances the carrier was chargeable with notice that an immigrant's boxes contained other than legal baggage. We think the same rule would apply here. But

it is said that even so, it does not appear that the defendant had notice of the purpose for which they were desired in Milwaukee.

As we understand the law, when a party seeks to recover loss of probable profits from some special contract, he must show that the defendant had actual notice of the particular contract, but when he simply seeks to recover on the basis of his past average earnings, without regard to any special contract which might have promised exceptional profits, we do not understand that special notice to the defendant is necessary.

Substantially the same line is drawn here that is drawn in the matter of pleading. As we held in *C. & E. R. R. Co. v. Meech*, 163 Ill. 305, a general allegation of loss of profits is sufficient to allow proof of the plaintiff's particular employment and ordinary earnings, but when a claim is for a profit from a special contract, this fact must be set out in the declaration. In many cases the phrase ''special damages'' will be found to refer to damages arising from a special contract as distinguished from usual, average profits.

The Brethauer case in 223 Ill. 521 is to the same effect as the Meech case.

In the case at bar no question is raised as to the pleading, as no objection has at any time been made by the defendant to the admission of any evidence on the question of damages because of an alleged variance or any 'alleged failure on the plaintiff's part to set out in the bill of particulars his probable loss of profits as an element of damage.

In *I. C. R. R. Co. v. Byrne*, 205 Ill. 9, the court states at p. 22 and there was evidence—its exact character does not appear—tending to show that the agent was informed that the theatrical show was to be given a certain night at Bloomington, and the question as to whether the defendant had notice of such engagement was left to the jury. We take it this notice could be shown from dealings of the parties and by any facts in evidence.

In *Foster v. C., C., C. & St. L. Ry.*, 56 Fed. Rep. 434, cited by defendant at p. 9 of its brief, it appears that the theatrical troupe claimed damages because its properties were delayed

so as to miss two advertised performances of which the carrier knew. Because these performances were missed and salaries suspended the troupe broke up, and the plaintiff lost profits from other performances, for which he also attempted to recover. The court held:

"The loss from failure to arrive in season to give performances which the parties knew the troupe was going to Louisville to give, would come fairly within the contemplation of the parties. The loss from failure to pay the performers would not."

The opinion indicates the true test,—can the probable profits claimed be said to be fairly within the contemplation of the parties?

In the case at bar the defendant had notice that the plaintiff resided in Chicago by the terms of the contract in the coupon book and by his card. It had notice as above pointed out that the defendant was carrying trunks containing samples to Milwaukee and was specially told by the plaintiff that these sample trunks must be there at a certain time, to which defendant's agent agreed. It is fair to say that the defendant's agent was reasonably charged with notice that the plaintiff was going to Milwaukee in the ordinary course of business as a drummer and for the purpose of selling goods.

It is urged that even though the defendant could be held responsible for loss of profits in Milwaukee, it could by no possibility be held for profits in the other towns where the plaintiff went. We do not, however, think that this is a distinction of importance. The defendant was, we think, chargeable with notice that plaintiff was going on a trip, and whether he stayed in Milwaukee or not made no difference to the defendant. We think that the plaintiff is entitled to recover for loss of profits in other towns as well as in Milwaukee up to Thursday night, when plaintiff's trunk reached Appleton pursuant to plaintiff's instructions in his letter of October 9. We think he should have been on hand there to receive his trunk, and that he cannot recover for any subsequent loss of profits.

Defendant's counsel cite many cases in support of its contention on this branch of the case. Many of these cases are

distinguishable as being cases where damages were claimed for alleged loss of profits from some special contract of which the defendant had no notice. Defendant's counsel did not cite the Friedman case, 146 Ill. 583, where a commercial traveler sought to prove loss of profits from a special contract of employment, but the court held that such proof was not admissible under a general allegation of loss of profits in the declaration. It is to be noted that three judges dissented, including Judge Magruder, who wrote the opinion of the court in the later case of *I. C. R. R. Co. v. Byrne*. Subsequent cases, such as the Meech case and the Brethauer case, have distinguished the Friedman case as being a special contract case. Some of the other cases cited by defendant's counsel are distinguishable as involving proof of possible future profits without any basis of past profits to base the estimate upon. This is true of the Priestly case in 26 Ill. and the Hale case in 83 Ill. *Seaboard Air Line Ry. v. Harris*, 49 S. E. Rep. 703, seems to be in point, but we do not think would be followed in this state. We calculate plaintiff's damages as follows: Usual sales during October and November, $40,000; commission at 8 per cent, $3,200; usual expenses, $600; usual net profits for two months, $2,600. Four days are about one-thirteenth of working days in two months' period. Usual profit for four days, $200. Plaintiff testified that he sold about one-fourth of his usual trade in these towns. That represented a profit of $50. That is a credit that the defendant would be entitled to, leaving the net loss at $150, and accordingly I shall find for the plaintiff in that amount.